### In re INCORPORATION OF HAINES MISSION.

(First Division.   Skagway.   October 30, 1908.)

#### No. 277.

1. MUNICIPAL CORPORATIONS (§ 6*)—BODIES WHICH MAY BE INCORPORATED—CITIZENS—INDIANS.

A petition was presented for the incorporation of Haines Mission under the act of Congress providing for the incorporation of any community in Alaska having 300 or more permanent inhabitants. The proofs showed and the court found that there were 216 white persons living within the proposed town and 151 Indians. *Held*, the act of Congress requiring at least 300 permanent white inhabitants to incorporate, that Indians are neither electors nor citizens, and cannot be counted, and the petition denied.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 6.*]

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

2. MUNICIPAL CORPORATIONS (§ 6*)—BODIES WHICH MAY BE INCOR-
POBATED—INDIANS AS CITIZENS.

On the hearing of a petition for the incorporation of Haines
Mission, the court held that the Indians living within the town
limits were neither electors nor citizens of the United States,
and should not be considered in calculating the 300 permanent
inhabitants necessary to incorporate.

[Ed. Note.—For other cases, see Municipal Corporations, Dec.
Dig. § 6.*]

Petition for municipal incorporation of Haines Mission.

The petitioners herein are asking that the settlement now
known as Haines Mission, situate on the western shore of Lynn
Canal, be incorporated as a municipality, to be known as the
town of Haines, by virtue of the provisions of chapter 1778,
Act April 28, 1904, 33 Stat. p. 529, entitled "An.act to amend
and codify the laws relating to municipal corporations in the
district of Alaska." The proceeding was instituted by the fil-
ing of a petition signed by more than 60 male adults, who were
bona fide residents of the community, and who are a large ma-
jority of the prominent business men there. The petition con-
tains allegations of the statutory requirements, among which
is the allegation "that there are more than 300 permanent in-
habitants in said community," designates the proposed bound-
aries, and sets up the following as reasons why the town should
be incorporated:

"First. That the town of Haines is an old established settlement,
having been founded more than 20 years ago; that from a small
trading post it has developed into a thriving, prosperous, and per-
manent community, where all lines of business are represented; that
it contains more than 300 permanent homes, seven general stores, a
United States post office, three hotels, a sawmill, four saloons, and
many other enterprises.

"Second. That the community is wholly without police protection.

"Third. That the community is without any adequate or sufficient
water supply, and the only protection against fire is a sort of bucket

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

brigade, which is supported by voluntary subscription; that, if the town should be incorporated, an abundant supply of water can be obtained from the military reservation near at hand, which will be furnished free of cost to the municipality."

Against this petition four protests have been filed. The first of these is signed by 51 natives, and sets up that the signers all live within the proposed corporate limits and have valuable property therein, which would be taxable if brought within the limits of the municipality; that they are not citizens, and cannot become such under the existing laws, and could have no voice in the management of the town if incorporated, and they pray that they be not counted "as residents of the town for the purpose of incorporating; and that, if the said town of Haines is incorporated, the present proposed lines be changed, so as to exclude the Indian or native village from the municipality."

The second protest is signed by 16 residents of the town, among whom are a number of prominent Haines business men. This protest contains the allegation:

"That there are only about 150 white permanent inhabitants residing within the proposed corporation; that we do not believe the law contemplates counting the Indians as inhabitants for the purpose of incorporating; that the expense of running the city or town government would be so great that it would work a great hardship on the taxpayers in said corporation to meet it."

The protest also asserts that certain persons who signed the original petition of incorporation were not bona fide residents of the town when they signed the petition.

A third protest is filed by M. Tipin, one of the signers of the last-mentioned protest. This protest sets up practically the same reasons as those stated in the last, with an additional allegation that the land included within the proposed boundaries is in litigation.

The fourth protest is filed by J. F. Malony, a property owner in, but not an inhabitant of, Haines Mission. This protest is based upon virtually the same grounds as the second.

On the day of the hearing on the petition, several members of a committee appointed by the petitioners, and a number of the petitioners other than the committee, appeared with their attorney. None of the protestants appeared in person, though they were represented by counsel. Neither were there any persons to testify in support of the allegations of the protests. A number of persons were sworn and testified in support of the petition. It appears from the testimony offered that the conditions in the community of Haines would be much improved under municipal control; but a serious question arises at the outset. The testimony disclosed that, while there are more than 300 persons living within the proposed municipal boundaries, only 216 of these are white persons; the balance being natives of Alaskan Indians. Of these latter, there are living within the proposed lines about 152.

Z. R. Cheney, for petitioners.

J. G. Heid, J. J. Rogers, and W. B. Stout, for protestants.

J. J. Boyce, U. S. Dist. Atty.

GUNNISON, District Judge. On the argument, counsel for protestants urged that it was not the intention of Congress that the natives or Indians were to be counted in arriving at the number of inhabitants necessary for the incorporation of the community. On the other hand, counsel for petitioners asserted that natives who were born since the cession of Alaska to the United States, who had severed tribal relations, and who lived separate and apart from their tribe and had adopted the ways of the white man, were citizens of the United States by virtue of the provisions of the act of February 8, 1887, entitled "An act to provide for the allotment of lands in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States and the territories over the Indians, and for other purposes" (24 Stat. 388, c. 119), and as such must be counted. He urged further that, even if such

a view were not tenable, the natives generally must be counted. Other questions as to what should and what should not be included in the boundaries were discussed; but, as these are only to be determined in the event that the settlement is incorporated, it is unnecessary to consider these matters until it is determined whether or not the order of incorporation can be entered. That depends, in the first instance, upon whether the statutory requirements are met.

The first of these requirements is found in the opening sentence of chapter 1778, § 1, already referred to, the language of which is:

"That any community in the district of Alaska having three hundred or more permanent inhabitants may incorporate as a municipal corporation, termed a town, in the manner hereinafter provided. * * *"

Thus it appears at once that, before a community may seek to be incorporated into a municipality, it must have "three hundred permanent inhabitants." But what is meant by "three hundred permanent inhabitants"? Is it that whites alone, or that both whites and Indians, are to be counted? The answer to this question is patent from a careful perusal of the act. It is plain that that phrase includes males and females, and that it is restricted neither to electors nor taxpayers. It is also plain, I think, that Congress did not intend that natives should be counted, unless they were to be considered citizens. Suppose, for the sake of the argument, that the natives, who are not, and cannot under the existing laws pertaining to Alaska become, citizens, are to be counted in making up the requisite 300. In the present instance, there are 216 whites and 152 natives. Among these whites are a considerable number of males who are either citizens or have declared their intention to become such, and who have resided in the community the required period. These are by statute (section 2, c. 1778, supra), declared qualified electors, and it is to them and to them

only that the ultimate question of incorporation would be left to be decided by the ballot. The natives are not electors, and consequently could have no voice either in the determination of that question or in the subsequent management of the affairs of the municipality, in the event that the incorporation should be carried. But let us follow this construction a little further to its logical conclusion.

There are in Alaska settlements composed of 300 or more natives, in which, for the sake of argument, let us suppose (and this is by no means an impossible or extravagant supposition) that there are no white men who are electors. There are in these settlements more than 60 "male adults" who are "bona fide residents of the community." Thus, under this construction, they would be qualified to file a petition for incorporation. For the requisite number of inhabitants is here, if Indians are to be counted. But it may be said that such a petition would not be considered under such circumstances. Why not? It might be that the condition of the natives and the community generally would be much benefited by incorporation, that the natives themselves are mentally capable of managing their municipal affairs, and that every reason would point to the granting of the petition. What would be the result under these circumstances, where every requisite preliminary to the granting of the petition was present, and where every reason would move a judge to grant it? The statute requires under those circumstances that the judge shall order an election "to determine whether the people of the community desire to be incorporated," and to that end he must appoint "three qualified voters" to act as judges of "such election."

Section 2 of the act provides:

"That every male person twenty-one years of age who is a citizen of the United States or who has declared his intention to become such, and who has resided continuously one year next proceding the election in the district of Alaska and six months preceding the elec-

tion within the limits of the proposed corporation, shall be qualified to vote at said or any subsequent municipal election."

But within the proposed boundaries of such a community there could be found persons neither qualified to fill the office of the judge of election nor to vote upon either the question of incorporation or for officers to manage the affairs of the municipality. What would be a more futile proceeding than to entertain such a petition and grant an order thereon; and yet, if the natives in the case at bar are to be counted in making up the 300 inhabitants for the proposed town of Haines, consistency demands that a petition filed under the circumstances similar to the case just stated must be considered and an order issued thereon. It must be plain to any one who stops to consider the situation that Congress, when it enacted this statute, had no intention of placing upon the books an act which would be impotent or filled with inconsistencies, and to place upon this act a construction that would develop into such a situation as that would, in my opinion, be to place upon it an interpretation never intended.

But counsel for petitioners argues with much ingenuity, that certain of the natives residing at Haines are citizens of the United States and must be counted. The question as to the citizenship of the natives of Alaska has frequently been presented to this court on other occasions, and I am of the opinion that the act of Congress of February 8, 1887 (24 Stat. 388, c. 119), did not come within the provisions of article 3 of the treaty of cession, to wit:

"The inhabitants of the ceded territory, according to their choice, reserving their natural allegiance, may return to Russia within three years; but if they should prefer to remain in the ceded territory, they, with the exception of uncivilized native tribes, shall be admitted to the enjoyment of all the rights, advantages, and immunities of citizens of the United States, and shall be maintained and protected in the free enjoyment of their liberty, property and religion. The uncivilized tribes will be subject to such laws and regulations as

the United States may from time to time adopt in regard to aborig-inal tribes of that country."

In my opinion, this act had no reference to the natives of Alaska, and Congress has yet to act in their behalf. That there are many natives who are to-day capable of becoming citizens, and who would make better citizens than hundreds of men who are annually given the franchise, I grant; but Congress has not yet seen fit to open the doors to the Alaskan natives by legislation.

It is with much regret that I have arrived at the conclusion that the natives may not be counted, for it is undoubted that this community would be much benefited in every way by incorporation. But, since the community is at this time insufficient in number of inhabitants, I have no discretion in the matter, but must deny the petition for that reason.